ROEDER, Appellant, vs. SIMONSON and another, Respondents.

*February 9—March 6, 1923.*

*Infants: Rescission of contracts: Rescission in part: Effect.*

Where a minor made a contract with plaintiff to work land on shares, and shortly thereafter plaintiff advanced money for the purchase of an automobile for the minor, and later advanced money to enable the minor to purchase a new car, taking a note signed by him and his father for the amount he had advanced on both cars, and on settlement the new automobile was turned over to plaintiff in exchange for another of less value, and an adjustment of account was made by which it was agreed that defendant owed plaintiff $400, an attempt by the minor, after arriving at his majority, to return the car in a depreciated condition and to be thereby relieved of his agreement was an attempt to rescind in part only, and was not effective.

APPEAL from a judgment of the county court of Columbia county: A. F. KELLOGG, Judge. *Reversed.*

Action on a promissory note signed by a minor and his father. In the spring of 1920 plaintiff and defendant *Lowell Simonson,* a minor, made an agreement whereby defendant was to work three acres of tobacco and four acres of potatoes on shares, defendant to do the work in caring for and harvesting the crop and to receive one half the crop in payment.

Shortly after the crops were planted defendant desired

an automobile and plaintiff loaned him $115 with which to buy one. Some time later defendant wanted a new car and plaintiff again advanced money. The old car was traded in and a new car secured for defendant, plaintiff taking a note for $743, the total amount of money he had advanced for the two cars. This note was signed by defendant *Lowell Simonson* and his father. Plaintiff also took a mortgage on the car and *Lowell Simonson's* interest in the crops signed by both defendants.

In the fall of 1920 a disagreement arose between plaintiff and the minor, plaintiff claiming to be entitled to $250 for labor performed in caring for the crops. An adjustment was made whereby plaintiff was allowed $175 for his work. Plaintiff then gave to *Lowell Simonson* $50 in cash and another automobile, and received back the new automobile purchased earlier in the summer, a bill of sale of the auto and the minor's interest in the crops, and a note for $400 signed by the minor. He also received a chattel mortgage covering the second car, signed by both defendants. The bill of sale was also signed by both defendants, but the note was signed by the minor alone.

Plaintiff retained possession of the two notes and mortgages. He testified that the second note and mortgage were to be received as security for the payment of the $400 only on condition that the note was signed by the father as well as the minor. *Lowell Simonson* reached his majority in the spring of 1921. About that time he offered to return the car to plaintiff, who refused to accept it.

The action was brought on the note for $743 signed by both defendants. The complaint set out the making of the note, and alleged that no part had been paid except $343.

In the answer of *Lowell Simonson* the defense of infancy was set up and the allegation made that defendant, upon arriving at the age of twenty-one years, had tendered the automobile and demanded the return of the note. As a counterclaim defendant alleged that plaintiff had converted

to his own use property of the defendant consisting of potatoes of the value of $250 and tobacco of the value of $460, and asked judgment in the sum of $710.

Defendant *Jacob Simonson* alleged that he was illiterate and could not read or write; that plaintiff induced him to sign the note for $732 and the mortgage covering the car and the crops upon the representation that it was merely a release of his interest in the property of his minor son; and that had he known the facts he would not have signed a chattel mortgage and note.

As a further defense it was alleged that the note had been satisfied by the return to plaintiff of an automobile of the value of $743, potatoes of the value of $250, and tobacco of the value of $460, and that plaintiff had agreed to accept the above from defendant *Lowell Simonson* in full settlement of the note and had agreed also to deliver the note to *Lowell Simonson.*

Conflicting testimony was given as to the amount and market value of the potatoes and the tobacco. As to the note sued on, plaintiff testified that he was holding it until the father signed the second note. Defendant *Lowell Simonson* testified that plaintiff stated that the note was discharged and that he was keeping it merely as evidence of the transaction.

In a special verdict the jury found that *Jacob Simonson's* signature had not been obtained by fraud; that the note signed by *Jacob Simonson* had been paid; that *Lowell Simonson* had rescinded the contract covered by the second note and had offered to return the consideration; that at the time the offer was made the car was in as good condition as when delivered, except for ordinary wear; that the value of *Lowell Simonson's* share of the crops was: potatoes $175, tobacco $350; that the value of plaintiff's work in caring for the crops was nothing; and that plaintiff had paid *Lowell Simonson* $50 in cash.

Judgment was ordered dismissing the complaint as to

both defendants, with costs; and for $475 in favor of defendant *Lowell Simonson* on the counterclaim. ,

For the appellant there was a brief by *Rogers & Rogers* of Portage, and oral argument by *H. B. Rogers*.

For the respondents the cause was submitted on the brief of *C. H. Metzler* of Portage.

JONES, J. An appeal seldom comes to this court where the verdict is so plainly contrary to all the credible evidence in the case. This is strikingly illustrated in the finding of the jury that the value of the plaintiff's work in caring for the crops was nothing. The testimony showed that the tobacco was not well cared for by *Lowell*, the minor, and that the plaintiff gave much of his time and work to preserve it. This testimony was not disputed. In the adjustment made between the parties in the fall defendant conceded that the work was worth $175, although plaintiff claimed it was worth $250.

Although the jury found that when *Lowell* offered to return the car it was in as good condition as when he received it, with due allowance for wear considering the character and use made of the car, *Lowell's* own testimony showed that he had run it without oil and had broken it. There was evidence of his admission that he ran it without oil and water; that this exploded and bursted the engine and broke it all to pieces. It is true there was some evidence that he had had it repaired.

Although there was evidence that the plaintiff admitted that the note for $743 was paid by the transaction by which a new note for $400 and a chattel mortgage and bill of sale were executed to him, we do not consider that the finding of the jury on that issue was sustained by credible evidence. At that time plaintiff had a note signed by the minor and his father for $743 actually expended by the plaintiff. He knew that the minor was irresponsible. The burden of showing a release of the only responsible signer was on de-

fendants. It was conceded by *Lowell* that plaintiff was unwilling to surrender the note, and *Lowell* admitted that he spent three days and more trying to get his father released from the note, and failed, and that his father, after consulting an attorney, refused to sign the new note.

The substance of plaintiff's testimony was that he accepted the note for $400 on condition that it be signed by the father. When we take into consideration the undisputed facts attending the transaction and the manifest prejudice of the jury in answering the other questions, we are convinced that defendants have not produced the burden of proof necessary to prove an agreement that *Jacob Simonson* was released from payment of the note he had signed. Moreover, there is serious doubt whether even on defendants' own theory there was a consideration for the release alleged.

By the adjustment made in the fall it was agreed by the minor, who was near his majority, with the consent of his father, that there was due the plaintiff $400. As part of that agreement he received a car, turned over to the plaintiff another car and his interest in the crops, and allowed plaintiff $175 for work done. He also received $50 with which to buy necessary clothing. *Lowell* used the car then turned over to him until his majority in the spring and made some use of it after he became of age. He then offered to return the car in its depreciated condition, and now the court is asked to relieve him from all obligation under the agreement of settlement and render judgment compensating him for the value of one half the crops.

Counsel for defendants cite authority to the effect that where a minor has bought articles not necessaries and "has disposed of, lost, or wasted the same during his infancy, his right to disaffirm is in no way dependent upon his making good to the other party what he received." The case before us does not involve a mere single transaction where a minor has bought or sold property and seeks to rescind,

and the innumerable decisions on that subject afford little help. It may be conceded that the agreement of settlement made in the fall was voidable, but it does not follow that it could be only partially rescinded.

In the offer to rescind the minor made no demand for the $400 note, nor for the car he had turned back, but only offered to return the car he finally received. He demands judgment for the full value of one half the crops, but makes no offer to pay the plaintiff for the work he had necessarily performed in caring for the crops nor for the money the minor had received for buying necessary clothing.

The settlement of the complicated transactions between the parties was not void, but was binding until rescinded. We feel compelled to hold that the attempt to rescind the agreement in part was not effective. By that agreement defendants acknowledged an indebtedness to the plaintiff in the sum of $400, and since there has been no rescission of the agreement the plaintiff is entitled to judgment for that amount against both defendants, with interest since November 19, 1920, and to judgment dismissing the counterclaim.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in accordance with the opinion.